FILED
2011 JUL 25 AM 10:08
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PALADIN COMMUNITY MENTAL HEALTH CENTER AND SHERRY OSTEEN, <br> PLAINTIFFS, <br><br> V. <br><br> UNITED STATES SECRETARY OF HEALTH AND HUMAN SERVICES AND ADMINISTRATOR OF CENTERS FOR MEDICARE & MEDICAID SERVICES, <br> DEFENDANTS. | § § § § § § § § § § § § § § § | CAUSE NO. A-10-CA-949-LY |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs' Application for a Preliminary Injunction filed December 15, 2010 (Doc. #3); Defendants' Motion to Dismiss and Opposition to Plaintiffs' Motion for Preliminary Injunction filed January 10, 2011 (Doc. #8); Plaintiffs' Amended Response in Opposition to Defendants' Motion to Dismiss filed January 12, 2011 (Doc. #10); Plaintiffs' Reply to Defendants' Response on the Merits filed January 17, 2011 (Doc. #13); Defendants' Reply in Support of their Motion to Dismiss filed January 20, 2011 (Doc. #14); Plaintiffs' July 4, 2011 letter and attached exhibit to the Court regarding the U.S. Secretary of Health and Human Services' Proposed Rule for CY 2012 (Doc. #15); and Defendants' responsive letter dated July 8, 2011 (Doc. #16). On January 13, 2011, the Court conducted a hearing on all pending motions, at which the parties appeared through counsel. Having considered the motions, responses, replies, evidence admitted at the hearing, argument of counsel at the hearing, applicable law, and case file as a whole, the Court

**GRANTS** Defendants' motion to dismiss Plaintiffs' complaint and **DISMISSES** Plaintiffs' application for preliminary injunction for the reasons that follow.

## Background

Plaintiff Paladin Community Mental Health Center ("Paladin") is a privately owned community mental health center located in Austin, Texas, providing comprehensive outpatient behavioral health services. In addition, Paladin offers partial hospitalization services, including a 24-hour emergency hotline, screening services for consideration of patient needing potential impatient care at the state-hospital level, and transportation services for resource-intensive services in outpatient behavioral healthcare. Paladin has been Medicare Certified as a Medicare Community Mental Health Care Center ("CMHC") since August of 2007. Medicare is the predominant source of income for Paladin, accounting for nearly 84 percent of its revenue.

The partial-hospitalization program ("PHP") is an intensive outpatient program of psychiatric services provided to patients who have acute mental illness as an alternative to inpatient psychiatric care. *See* 75 Fed. Reg. 71,800, 71,990 (Nov. 24, 2010). PHP services are furnished by either a CMHC that satisfies the requirements of 42 U.S.C. § 1395x(ff)(3)(B), or by a hospital outpatient department. *See* 42 U.S.C. § 1395x(ff)(3)(A), (B). Both hospitals and CMHCs receive payment for their PHP services under Medicare Part B. *See* 42 C.F.R. 410.43 (2009).

Until 1997, Medicare paid suppliers of PHP services based on their specific costs. In 1997, Congress directed the Secretary of Health and Human Services (hereinafter referred to as "the Secretary" or "HHS"[1]) to establish an outpatient prospective payment system ("OPPS") for outpatient department ("OPD") services. *See* 42 U.S.C. §1395l(t)(1)(A) (also referred to as "the

---

[1] The Court will refer to Defendants jointly as the Secretary.

Act"). Under OPPS, Medicare pays outpatient service providers for the services they provide prospectively based on predetermined payment rates. Congress instructed HHS to develop a classification system for covered OPD services, establish relative payment weights for covered OPD services, and determine a wage adjustment factor to account for differences in labor-related costs across geographic regions. *See id.* at §1395l(t)(2)(A)-(G).

Since establishing the OPPS in 2000, the Secretary has undertaken numerous rulemakings to facilitate its implementation, including promulgating rules governing the payment of covered PHP services furnished by hospitals to their outpatients or by CMHCs. *See id.* at §1395l(t)(1)(B)(I). The Secretary originally established the PHP relative payment weight by analyzing "the service components billed by hospitals over the course of a billing period and determin[ing] the median hospital cost of furnishing a day of partial hospitalization." 65 Fed. Reg. at 18452.

When the OPPS was first established, HHS considered only hospital-based PHP cost data to set the *per diem* relative payment weight. Over time, the Secretary has utilized either hospital-based PHP cost data alone or a combination of both hospital and CMHC data to establish PHP service payment rates ever since, and has so specified in each year's PHP service payment rates. The Secretary has used hospital-based PHP cost data only to set the *per diem* payment rates for PHP services when CMHC cost data was unavailable or of questionable validity.

On July 2, 2010, the Secretary sought comment on a proposed rule that would establish the payment rate for PHP services in 2011. *See* 75 Fed. Reg. 46170, 46298-46301 (Aug. 3, 2010). The Secretary proposed computing separate PHP *per diem* rates for CMHCs and hospital-based PHPs based on their own respective data. On November 24, 2010, after reviewing the comments received

3

in response to the proposed rule, the Secretary published the Final Rule. *See* 75 Fed. Reg. at 71,990-994.

Plaintiffs Paladin and one of its outpatients, Sherry Osteen, filed suit in this Court on December 14, 2010, challenging the Secretary's use of certain data to determine the Medicare payments for PHP services provided by CMHCs in 2011.[2] Specifically, Paladin asserts that the Secretary violated a statutory obligation when she included cost data derived from CMHCs to help determine the relative payment weights (one of the methodological components used to determine the outpatient prospective payment rates for PHP services) for PHP services rendered by CMHCs, rather than only cost data derived from hospitals. Paladin claims that the Secretary has "circumvented the clear instructions of Congress regarding utilization of hospital cost data as the sole metric for developing relative payment weights for partial hospitalization services for CMHCs", and that the Secretary's decision to use both CMHC and hospital data contravenes the Medicare Act and the Administrative Procedure Act. Paladin complains that applying the 2011 rates will result in irreparable harm because the resulting decrease in its 2011 Medicare payment rates will likely force Paladin to discontinue providing PHP services.

## Analysis

*Standard of Review*

In its motion to dismiss, the Secretary seeks dismissal of Paladin's claims for lack of subject-matter jurisdiction and failure to state a claim. *See* FED. R. CIV. P. 12(b)(1), (6). In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court may rely on: "1)

---

[2] As Plaintiffs' interests do not diverge, for convenience they will be referred to jointly as Paladin.

the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 176 (5th Cir. 1990) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Once jurisdiction is challenged, the burden rests upon the party seeking to invoke the Court's jurisdiction to prove that jurisdiction is proper. *Boudreau v. United States,* 53 F.3d 81, 82 (5th Cir. 1995). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Federal Election Comm'n,* 138 F.3d 144, 151 (5th Cir. 1998) (internal quotations omitted).

Motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) are viewed with disfavor and are seldom granted. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Claims asserted in the complaint are liberally construed in favor of the plaintiff and all facts pleaded are taken as true. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, "[f]actual allegations must be enough to raise a right to relief above the speculation level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 n.10 (5th Cir. 2007) (stating no longer is court to apply minimal standard of adequate pleading described in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content

5

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. See also Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

The Secretary contends that Paladin has failed to establish subject-matter jurisdiction based upon the fact that Congress has precluded judicial review of claims concerning the Secretary's determination of relative payment weights for covered OPD services or, in the alternative, that Paladin has failed exhaust all administrative remedies. The Secretary further argues that even if the Court determines that subject-matter jurisdiction exists, Paladin has failed to state a claim for relief because its interpretation certain language in the applicable statute has been rejected by the Fifth Circuit.

The Act states, in relevant part, that the Secretary "shall . . . establish relative payment weights . . . *based on* [] hospital costs." 42 U.S.C. §1395l(t)(2)(C) (emphasis added). The Secretary argues that Paladin's claim that the phrase "based on" requires the Secretary to determine PHP service payment rates based *solely* on hospital-based cost data has been rejected by numerous courts, including the Fifth Circuit, which have concluded instead that the phrase "based on" does not mean based "solely." *See Federal Recovery Servs., Inc. v. United States*, 72 F.3d 447, 451 (5th Cir. 1995) ("Congress chose not to insert the adverb 'solely' before 'based upon,' yet to hold as [movant] urges would accomplish exactly that result and alter the statute's plain meaning.").

In response, Paladin asserts that this cause is not a "rate determination" case that would be precluded from review, but at dispute over whether the executive branch must adhere to Congressional dictates unless provided discretion to do otherwise. Paladin argues that the Supreme Court has held that jurisdiction exists, despite a judicial-review restriction, when the executive has acted in excess of delegated powers. *See Leedom v. Kyne* 358 U.S. 184 (1958). Paladin further

argues that the Supreme Court's decision in *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 681 (1986) allows judicial review in this case because the Act is *ultra vires*, and therefore Paladin asserts a valid constitutional claim for which review cannot be barred. *See Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 20 (2000) (*Michigan Academy* exception applies where aggrieved party "can obtain no review at all unless it can obtain judicial review in a § 1331 action."). With regard to the Secretary's argument regarding Paladin's interpretation of "based on" in the language of the Act, Paladin asserts that the Secretary relies on *dicta* from a variety of cases having no bearing on the meaning of the Social Security Act of 1935, Medicare Part A, Medicare Part B, or any other statue specifically related to OPD services.

In 1997, Congress directed the HHS to establish an OPPS for OPD services. *See* 42 U.S.C. §1395l(t)(1)(A). First, section 1395l(t)(2) sets forth the OPPS' "system requirements," which include relative payment weights that the Secretary uses to establish the outpatient prospective-payment rates. *See id.* §1395l(t)(2). Second, section 1395l(t)(9)(A) requires the Secretary to review and revise, at least on an annual basis, the relative payment weights for covered OPD services to take into account changes in medical practice, changes in technology, the addition of new services, new cost data, and other relevant information and factors. *See id.* § 1395l(t)(9). Third, section 1395l(t)(12) explicitly insulates each of the determinations the Secretary makes in subsections (t)(2) and (t)(9), including the establishment of relative payment weights and periodic adjustments to these weights, from judicial and administrative review. *See id.* § 1395l(t)(12)(A), (C).[3] Section

---

[3] The intent of Congress to bar judicial review is further reflected in the Act's legislative history. *See* H.R. REP. 105-149, 724, 1997 WL 353017 ("The Secretary would be authorized periodically to review and revise the groups, relative payment weights, and the wage and other adjustments to take into account changes in medical practice, medical technology, the addition of new services, new cost data, and other relevant information . . . . The provision would prohibit

1395l(t)(2)( C) contains no language or requirement that relative payment weights be based *solely* on hospital costs. *See Federal Recovery Servs., Inc.*, 72 F.3d at 451. Thus, because the Secretary's relative payment weights for CY2011 were based in part on hospital cost data, the Court can find no violation of the statue, let alone evidence that the Secretary acted in excess of its delegated authority under the statute.

"The judicial power of the United States conferred by Article III of the Constitution is upheld just as surely by withholding judicial relief where Congress has permissibly foreclosed it, as it is by granting such relief where authorized by the Constitution or by statute." *Dalton v. Specter*, 511 U.S. 462, 477(1994).

> The presumption of judicial review is, after all, a presumption, and "like all presumptions used in interpreting statutes, may be overcome by," *inter alia,* "specific language or specific legislative history that is a reliable indicator of congressional intent," or a specific congressional intent to preclude judicial review that is " 'fairly discernible' in the detail of the legislative scheme."

*Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 673 (1986) (quoting *Block v. Community Nutrition Institute,* 467 U.S. 340, 349, 351(1984)).

Paladin asserts that the Court can apply the narrow exception set forth in *Leedom v. Kyne*, which permits judicial intervention even when the relevant statutory language precludes jurisdiction, when an agency exceeds the scope of its delegated authority or violates a clear statutory mandate. *See Kirby Corp. v. Pena,* 109 F.3d 258, 268 (5th Cir. 1997). Courts, however, generally have interpreted *Kyne* as sanctioning the use of injunctive powers only in a very narrow situation in which there is a "plain" violation of an unambiguous and mandatory provision of the statute. *See Boire v.*

---

administrative or judicial review of the prospective payment system.")

*Miami Herald Pub. Co.,* 343 F.2d 17, 21 (5th Cir.), *cert. denied,* 382 U.S. 824 (1965). Under *Kyne,* access to the courts is accorded only if the agency's interpretation "is infused with error which is of a *summa* or *magna* quality as contraposed to decisions which are simply *cum* error." *American Airlines, Inc. v. Herman,* 176 F.3d 283, 293 (5th Cir. 1999). In other words, the exception allowing review of an "agency action allegedly 'in excess of authority' must not simply involve a dispute over statutory interpretation . . . [but must be] so contrary to the terms of the relevant statute that it necessitates judicial review independent of the review provisions of the relevant statute." *Kirby,* 109 F.3d at 269 (citing *Kyne,* 358 U.S. at 188). *See also, Lundeen v. Mineta,* 291 F.3d 300, 312 (5th Cir. 2002).

The Court finds that Paladin's claims allege solely a dispute over statutory interpretation involving the Secretary's interpretation of the Medicare statute for the establishment and adjustment of OPD payment rates; thus, the *Kyne* exception does not apply. No agency error has occurred, let alone an "egregious error" of "*summa* or *magna* quality"; Paladin claims do not raise a claim of a statutory violation. The Court finds that the Secretary has exercised her statutory authority and broad discretion to establish the 2011 payment rates for PHP services based on her interpretation of the terms of the Act. Accordingly, because sections 1395l(t)(12)(A) and (C) expressly preclude review of the relative payment-weight determination, and because the Secretary has acted within her statutory authority to establish payment rates for OPD services pursuant to section 1395l(t)(2)(C), the Court finds no basis to overcome the clear statutory preclusion of review provisions Congress enacted.[4]

---

[4] Having concluded that the Court lacks subject-matter jurisdiction based on the Act's clear prohibition of judicial review in this case, the Court need not address the Secretary's argument that Paladin has failed to exhaust administrative remedies or failed to state a claim for relief pursuant to

## Conclusion

In accordance with the foregoing,

**IT IS ORDERED** that Defendants' Motion to Dismiss filed January 10, 2011 (Doc. #8) is **GRANTED**.

All claims and causes of action asserted in Plaintiffs' Complaint for Declaratory Judgment (Doc. #1) are **DISMISSED WITHOUT PREJUDICE**.

Having granted Defendants' motion to dismiss, the Court need not address Plaintiffs' application for preliminary injunction. Accordingly,

**IT IS FURTHER ORDERED** that Plaintiffs' Plaintiffs' Application for a Preliminary Injunction filed December 15, 2010 (Doc. #3) is **DISMISSED**.

A Final Judgment shall be rendered subsequently in this cause.

SIGNED this 25th day of July, 2011.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

---

Federal Rule of Civil Procedure 12(b)(6).